# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **NORMAN IP HOLDINGS, LLC** § | |
| § | |
| v. § | NO. 6:09-cv-270 |
| § | |
| **CASIO COMPUTER CO., LTD., et al.** § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Kyocera Corporation, Kyocera Communications, Inc. and Kyocera Wireless Corp. ("Kyocera"), and Sierra Wireless, Inc. and Sierra Wireless America, Inc.'s ("Sierra Wireless") (collectively, "Defendants") motion to dismiss Plaintiff Norman IP Holdings, LLC's[1] ("Norman") Fourth Amended Complaint, or alternatively, to transfer to the Southern District of California (Doc. No. 132). The Court recommended that Defendants' motion to dismiss be denied and held the alternative motion to transfer in abeyance (Doc. No. 161). Having considered the parties' submissions and argument, the Court **DENIES** Defendants' alternative motion to transfer (Doc. No. 132).

## BACKGROUND

This suit was originally brought by Saxon Innovations, LLC ("Saxon") against Kyocera and Sierra Wireless for infringement of U.S. Patents Nos. 5,592,555 ("the '555 Patent"), 5,502,689 ("the '689 Patent"), 5,247,621 ("the '621 Patent"), 5843,577 ("the Patent '577 Patent"), and / or 5,530,597 ("the '597 Patent"). Effective February 1, 2010, Saxon assigned all rights, title, and interest in the patents-in-suit to Norman IP Holdings, LLC ("Norman" or "Plaintiff"). Norman was subsequently substituted pursuant to Federal Rule of Civil Procedure 25(c) (Doc. No. 160).

---

[1] The Fourth Amended Complaint was originally filed jointly by Norman and Saxon Innovations, LLC ("Saxon"). Saxon, the original plaintiff in this case, has been dismissed from the case and Norman has been substituted in its place (Doc. No. 160).

Saxon is a Texas limited liability company with a principal place of business in Tyler, Texas. Norman is also a Texas limited liability company with a principal place of business in Tyler, Texas. Defendant Kyocera Corporation is a Japanese corporation with a principal place of business in Kyoto, Japan. Defendant Kyocera Wireless Corp. was a Delaware corporation with a principal place of business in San Diego, California. In April 2010, Kyocera Wireless Corp. merged with Defendant Kyocera Communications, which is a Delaware corporation with a principal place of business in San Diego, California. Defendant Sierra Wireless, Inc. is a Canadian corporation with a principal place of business in British Columbia, Canada. Defendant Sierra Wireless America, Inc. is a Delaware corporation with a principal place of business in Carlsbad, California.

Defendants state that their principal party witnesses and sources of proof are located in the Southern District of California. Defendants contend that the chipsets that provide the accused functionality are designed and supplied by non-party QUALCOMM Incorporated, which is headquartered in San Diego, California. Defendants state that QUALCOMM employees and documents with relevant information are located in the Southern District of California. Defendants also state that other third-parties, including ARM, Inc., Marvell Semiconductor, and Advance Micro Devices, Inc., are located in California and subject to the absolute subpoena power of the Southern District of California. Defendants do not specifically identify any party or non-party witnesses nor do they articulate with any particularity the relevant testimony such witnesses would provide.[2]

---

[2] Defendants' motion broadly alleges that the non-party and party witnesses are "knowledgeable about the accused products," MOT. at 8, or that they are "likely to have relevant documents." *Id.* at 11. However, neither the attached declarations nor any other reference in Defendants' motion names a party or non-party witness or describes what relevant testimony such witnesses would provide.

## **LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001); *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen I*"). To show good cause, the movant must demonstrate the proposed transferee venue is clearly more convenient. *Id.*

The Fifth Circuit has adopted the *Gilbert* factors, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), for determining § 1404(a) venue transfer questions. *Id.* at 315 n.9. When deciding whether to transfer venue, a district court balances two categories of interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice. *Id.* The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the

case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* This list is not exhaustive nor is any single factor dispositive. *Id.*

Although judicial economy is not among the list of enumerated *Gilbert* factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen II*"). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money. . . ." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Although co-pending patent infringement cases "may not involve precisely the same issues . . . significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen II*, 566 F.3d at 1351. Likewise, such gains may be realized where a court has become familiar with the technical subject matter by presiding over previous cases. *See, e.g., C2 Commc'ns Techs., Inc. v. PAETEC Corp.*, No. 09-314, 2009 WL 5204266, at *3 (E.D. Okla. Dec. 22, 2009) (transferring case due to transferee district's experience with prior case involving the same patent); *Telcordia Techs., Inc. v. Tellabs, Inc.*, No. 09-2089, 2009 WL 5064787, at * (D.N.J. Dec. 16, 2009) (same).

Several recent appellate opinions must be addressed in determining whether transfer is appropriate in this case. *Volkswagen I* involved a products liability claim stemming from an automobile collision in Dallas, Texas. 545 F.3d at 307. On rehearing *en banc*, the Fifth Circuit granted the petition for a writ of mandamus requiring the Eastern District of Texas to transfer the case to the Northern District of Texas. *Id.* at 307. It found that the trial court had erred by giving inordinate weight to the plaintiff's choice of venue and by not giving appropriate weight to – among other things – the locations of proof, the cost of attendance of willing witnesses, the availability of

4

compulsory process, and the localized interest of the fora. *Id.* at 318.

Shortly thereafter, the Federal Circuit – relying on *Volkswagen I* – granted a petition for a writ of mandamus requiring the Eastern District of Texas to transfer a patent case to the Southern District of Ohio. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322-23 (Fed. Cir. 2008). The Federal Circuit found that in the underlying case – *Lear Corp. v. TS Tech USA, Inc.*, No. 2:07-cv-406, 2008 U.S. Dist. LEXIS 105072 (E.D. Tex. Sept. 10, 2008) – the trial court erred by: 1) giving too much weight to the plaintiff's choice of forum; 2) failing to recognize the cost of attendance of witnesses; 3) failing to recognize the ease of access to sources of proof; and 4) disregarding the Fifth Circuit precedent for analyzing the public interest in having localized interests decided at home. *Id.* More recently, the Federal Circuit also granted a petition for a writ of mandamus requiring the Eastern District of Texas to transfer a patent case to the Northern District of California. *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009). It found that the trial court erred by: 1) improperly applying the 100-mile rule; 2) improperly substituting its central proximity for a measure of the convenience of the witnesses and parties, and the relative ease of access to evidence; 3) failing to appropriately weigh the compulsory process factor; and 4) erroneously weighing two irrelevant considerations: whether the transferee court would have personal jurisdiction over the plaintiff, and the defendant's litigation history in the transferor district. *Id.* at 1348.

The Federal Circuit also granted petitions for writs of mandamus in two more cases. In *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009), the appellate court found the district court had erred by: 1) improperly weighing the districts relative subpoena power; 2) considering sources of proof electronically transported to the transferor district; and 3) concluding the transferee district had no greater local interest in the resolution of the case. *Id.* at 1336-38. In *In re Nintendo*

*Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009), the appellate court found "[t]he district court: 1) applied too strict of a standard to allow transfer; 2) gave too much weight to the plaintiff's choice of venue; 3) misapplied the *forum non conveniens* factors; 4) incorrectly assessed the 100-mile tenet; 5) improperly substituted its own central proximity for a measure of convenience of the parties, witnesses, and documents; and 6) glossed over a record without a single relevant factor favoring the plaintiff's chosen venue."

Most recently, the Federal Circuit expanded on the interplay between judicial economy and convenience considerations. In *In re Zimmer*, the importance of co-pending litigation in the same forum was negated by other convenience factors such as the location of the identified witnesses. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381–82 (Fed. Cir. 2010). The Federal Circuit distinguished *Zimmer* from its holding in *Volkswagen II* because *Zimmer* presented less compelling reasons to have the same district court try multiple infringement suits. *Id.* (noting that the two cases filed by the patentee shared only one overlapping patent, accused no overlapping defendants, and involved different products that would lead to "significantly different discovery, evidence, proceedings, and trial"). That case also held that the plaintiff's principal place of business in Texas was not relevant to venue analysis because it was organized under the laws of another state. *Id.* at 1381.

## **DISCUSSION**

As an initial matter, the Court must determine whether this suit could have been brought in the Southern District of California. *Volkswagen*, 545 F.3d at 312 (observing "[t]he preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue"). Plaintiff argues the Court cannot transfer this case to the Southern District of California

6

because that court does not have jurisdiction over Norman. RESP. at 3. This brief remark appears to be an argument that this is not a case which might have been brought in the proposed transferee district, but "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff." *Genentech*, 566 F.3d at 1346. The only question is whether the court would have jurisdiction over Defendants. The Southern District of California would be proper venue because Defendants are either corporations residing in that district or are aliens organized under the laws of foreign states. *See* 28 U.S.C. § 1391.

Turning to the *Gilbert* factors, the Court finds that, although some considerations weigh in favor of transfer, Defendants have not demonstrated the Southern District of California is *clearly* more convenient.

Despite committing a substantial portion of their briefing to the convenience of witnesses, both parties fail to specifically identify any witnesses that may be called to testify. Although a party does not need to submit affidavit evidence indicating what specific testimony a witness may offer and why such testimony is important or relevant, *Volkswagen I*, 545 F.3d at 317 n.12, a party must at least identify the witnesses and represent they are relevant. *See Genentech*, 566 F.3d at 1344–43 (finding "the identification of" witnesses relevant to inequitable conduct, infringement, and invalidity "weighs in favor of transfer"). Here, the parties make sweeping generalizations that one entity or another employs some individuals with knowledge relevant to the case. In their original motion, Defendants do not even hint at the number of witnesses, whether party or non-party. In their reply, they begin to give some idea of the witnesses involved, noting they expect three witnesses from Kyocera and one from Sierra Wireless on the issue of non-infringement. They also identify

7

additional witnesses from five third-parties will "bring the list up to at least 9," presumably anticipating one witness from each third-party. Likewise, Plaintiff argues "its key witnesses are located in Pennsylvania and Virginia" without any indication as to who these key witnesses are or how many they may number. Plaintiff's argument as to non-party witnesses is only slightly more definite, as Plaintiff presumably had specific individuals in mind when referring to one third-party's witness as being located in the United Kingdom and another's being located in Israel.

Based on the parties' papers, the Court cannot conduct any meaningful analysis of whether this district or any district may be more convenient for witnesses in this case, nor can the Court determine whether any district might have absolute subpoena power over any non-party witnesses. *Cf. Nintendo*, 589 F.3d at 1198–99 (considering "[a]ll of the identified key witnesses"); *Hoffman-La Roche*, 587 F.3d at 1337 n.3 (assessing the convenience of "each witness [that] has been identified as having relevant and material information relating to this suit"); *Genentech*, 566 F.3d at 1343–44 (considering "identified witnesses relevant to" the issues of inequitable conduct, infringement, and invalidity); *TS Tech*, 551 F.3d at 1320 (finding error where "[a]ll of the identified key witnesses in this case are in Ohio, Michigan, and Canada"). Indeed, under the Fifth Circuit's transfer analysis, the location of *witnesses* is material; general statements about the location of personnel or employees are inadequate. *See Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-CV-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that, although a party need not provide affidavits identifying witnesses and outlining testimony, they must at least identify the witnesses); *Kimblery-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 3:09-cv-488, 2009 WL 2634860, at *6 (N.D. Tex. Aug. 26, 2009) (stating a party "seeking a transfer under § 1404(a) [must] identify the key witnesses and the general content of their testimony" (internal

8

quotations omitted)).

Other facts weigh in favor of transfer. Although Plaintiff argues it has some documents in its Tyler office, most relevant documents are likely located in California, British Columbia, and Japan because that is where Defendants and the identified third-party entities are located. *See Genentech*, 566 F.3d at 1345 (noting "where the defendant's documents are kept weighs in favor of transfer" because "the bulk of the relevant evidence usually comes from the accused infringer"). Contrary to Plaintiff's contention, the burden of transporting these documents is relevant to the Court's transfer analysis, despite the possibility of electronic production. *See id.* at 1346 (rejecting the "antiquated era argument"). The Southern District of California also has a local interest in this suit because Defendants' principal places of business are in that district and because the identified third-parties are from California. *See Hoffman-La Roche*, 587 F.3d at 1336 (finding local interest where "the cause of action calls in question the work and reputation of several individuals residing in or near that district").

However, weightier concerns counsel against transfer of this case. In particular, judicial economy strongly weighs against transfer because this Court has twice previously construed three of the four patents-in-suit. *See Saxon Innovations, LLC v. Apple Inc.*, No. 6:08-cv-265, 2010 WL 3064211 (May 7, 2010) (construing the '689, '555, and '597 patents); *Saxon Innovations, LLC v. Nokia Corp.*, No. 6:07-cv-490, 2009 WL 2413261 (July 30, 2009) (construing the '555 and '689 patents). The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616. Such concerns can be alleviated by transferring a case to, or retaining a case in, a district familiar with the patent-in-suit. *See Logan v. Hormel Foods Corp.*, No. 6:04-cv-211, 2004

9

WL 5216126, at *2-3 (E.D. Tex. Aug. 25, 2004) (transferring case to district that had previously construed the patent-in-suit). Indeed, "[w]here a party has previously litigated claims involving certain issues in one forum . . . a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable." *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (quotation omitted) (transferring case to district that had previously construed one of the patents-in-suit); *see also U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448, 2010 WL 2771842, at *6-8 (E.D. Tex. July 13, 2010) (transferring case to district that had previously construed three of the four patents-in-suit); *Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 WL 749305, at *4 (E.D. Tex. March 19, 2009) (transferring case because "the knowledge and experience that the judges of [the transferee district] have developed with respect to the [patent-in-suit] cannot easily be replicated in this district without a substantial duplication of effort"); *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992) (transferring case to court that presided over earlier litigation involving same patent). The interests of judicial economy can be a determinative factor when deciding whether transfer is appropriate. *See Invitrogen Corp. v. General Elec. Co.*, No. 6:08-cv-112, 2009 WL 331891, at * 4 (E.D. Tex. Feb. 9, 2009) (citing *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)). However, although this factor is "a paramount consideration" for the Court, *Volkswagen II*, 566 F.3d at 1351, it is not dispositive. *Volkswagen I*, 545 F.3d at 315.

Here, the Court has substantial experience with three of the four patents-in-suit. In the previous cases, the Court held claim construction hearings and issued two lengthy opinions, one construing terms of two, and the other construing terms of three, of the four patents-in-suit. Although the defendants and products in this case are different from those in the previous cases, the

underlying technology is substantially similar. The parties and the judiciary would benefit from the Court's familiarity with the patents-in-suit, which would require a substantial investment of time, energy and money to replicate. Accordingly, gains in judicial economy derived from the Court's prior experience with the patents-in-suit weighs against transfer. Additionally, this district has a local interest in adjudicating this dispute because Plaintiff is a Texas entity.[3] *Allvoice Developments US, LLC v. Microsoft Corp.*, Case No. 6:09-cv-366, slip op. at 6–8 (E.D. Tex. Apr. 8, 2010). Finally, Defendants' delay in bringing this motion to transfer approximately five months after Defendants answered and nearly seven months after Defendants were served, transfer would unnecessarily prejudice Plaintiff and delay this case by upsetting claim construction hearing deadlines.[4] *See Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 20, 2009) (finding prejudice caused by bringing motion six months after original complaint was filed counseled against transfer).

Weighing all of these considerations, the Court finds Defendants have not demonstrated the Southern District of California is clearly more convenient. Defendants have not shown that this is a case where the parties or witnesses are concentrated in the proposed transferee district or region, nor is this a case that has no connection to the district. Although Defendants have shown that

---

[3] The parties disagree as to the affect of Rule 25 substitution on venue analysis. Citing *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985), Plaintiff argues substitution does not impact the analysis. Defendants argue that case is speaking to jurisdiction and that the convenience of a former party has no relevance on the transfer analysis. Although *Minnesota Mining* discusses the affect of substitution both on personal jurisdiction and on whether venue is proper under the patent venue statute, *id.* 1261–64, it does not address § 1404. The Court does not need to resolve this disagreement. Norman and Saxon are both Texas entities. The parties agree that Norman essentially subsumed Saxon, taking over its offices, files, and personnel. Thus, the Court's analysis does not change whether Norman or Saxon is considered the relevant party.

[4] Defendants attempt to explain their delay by pointing to Saxon's assignment of the patents-in-suit to Norman, arguing the assignment "profoundly changes this litigation." This a conclusory excuse that Defendants fail to explain with any concrete examples of how the transfer changed the litigation. Moreover, the excuse is belied by the rest of Defendants' papers, which note that the principal Saxon employees are now Norman employees and which accuse Saxon and Norman of failing to respect corporate distinction.

11

sources of proof and the proposed transferee district's local interest weigh in favor of transfer, these considerations do not rise to the level of demonstrating the proposed transferee district is clearly more convenient, particularly in light of this district's interest in the suit, the prejudice caused by Defendants' delay in bringing this motion, and resources—both the parties' and the Court's—that will be conserved by retaining the case in this district.

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' motion to transfer.

**So ORDERED and SIGNED this 27th day of October, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE